Case No. 24-2722
# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**Preston Byron Knapp and Michelle Nichole Knapp,**

Appellants,

vs.

**Compass Minnesota, LLC and Daniel Philip Hollerman,**

Appellees.

_____

On Appeal from the United States District Court
For the District of Minnesota
Case No.: 0:24-cv-00100-SRN-DTS

## APPELLEE COMPASS MINNESOTA, LLC'S BRIEF

**FOLEY & MANSFIELD, PLLP**
Tessa Mansfield Hirte (#0396591)
Paul W. Magyar (#0399108)
250 Marquette Avenue, Suite 540
Minneapolis, MN  55401
Telephone:  (612) 338-8788

Attorneys for Defendant-Appellee
Compass Minnesota, LLC

## SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

This case arises out of a real estate transaction that fell through as a result of Appellants Preston and Michelle Knapp's ("the Knapps") conduct. The Knapps hired Brandon Joe Williams ("Williams") as their attorney in fact, who allegedly reviewed the documents related to the real estate transaction and counseled the Knapps that some of the documents were "collateral securities" that he believed could be exchanged for Federal Reserve notes pursuant to 12 U.S.C. § 412. The allegations in the Knapps' Complaint arise from Williams' mistaken conclusion and his unlawful advice to the Knapps and "orders" to Appellees Compass Minnesota, LLC ("Compass") and Daniel Hollerman ("Hollerman") that the documents could be exchanged for Federal Reserve notes. Williams' alleged orders and the claims in the Complaint are all based on conspiracy theories that have been widely and repeatedly rejected by the federal courts. Accordingly, the district court properly dismissed the Complaint with prejudice, denied the Knapps' motion to compel Compass and Hollerman to communicate with Williams, denied the Knapps' motions for default judgment, and awarded Compass and Hollerman their costs and fees as sanctions under Rule 11 and Rule 37.

Compass respectfully submits that this case is suitable for disposition without oral argument as no important or novel legal questions are presented.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE....................................................................4

I.    FACTUAL ALLEGATIONS ............................................................4

II.   PROCEDURAL HISTORY ..............................................................8

SUMMARY OF ARGUMENT ................................................................11

STANDARD OF REVIEW ......................................................................13

ARGUMENT ...........................................................................................14

I.    THE KNAPPS' APPEAL OF THE JUNE 4 ORDER IS
      UNTIMELY. ..................................................................................14

II.   THE DISTRICT COURT PROPERLY GRANTED COMPASS
      AND HOLLERMAN'S JOINT MOTION TO DISMISS. ...........15

      A.    The District Court Properly Dismissed Counts 1 and 2
            Because the Contracts Are Not "Securities," Compass and
            Hollerman Are Not "Reserve Banks," and the Federal
            Reserve Act Does Not Provide a Private Right of Action. .................16

      B.    The District Court Properly Dismissed the Knapps'
            Breach of Contract Claim Because the Knapps'
            Complaint Failed to Identify Any Contract or Provision
            That Was Breached. ...........................................................19

      C.    The District Court Properly Dismissed the Knapps'
            Breach of Fiduciary Duties Claim Because the Knapps'
            Complaint Failed to Identify Any Duty That Was
            Breached. ...........................................................................20

      D.    The District Court Properly Dismissed the Knapps' Claim

i

for Civil Penalties under 12 U.S.C. § 504 Because the Statute Does Not Apply to Compass and Hollerman or Provide a Private Right of Action. ......................................................21

E.   The District Court Properly Dismissed the Knapps' Remaining Claims Because the Knapps, as Private Citizens, Cannot Enforce Criminal Statutes......................................22

III.   THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN DENYING THE KNAPPS' MOTION TO COMPEL COMMUNICATION. ...............................................................23

A.   There is No Rule, Statute, or Case Law That Allows a Party to Bring a "Motion to Compel Communication" with a Non-Party. ...................................................................23

B.   The Power of Attorney Documents Executed by the Knapps Do Not Meet the Requirements of Minn. Stat. § 523.20. ..............................................................................................24

C.   Compass Was Not Required to Communicate with Williams Because His Purported Representation of the Knapps Constituted the Unauthorized Practice of Law. ....................27

IV.   THE DISTRICT COURT PROPERLY DENIED THE KNAPPS' MOTION FOR DEFAULT JUDGMENT..................................29

V.   THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN AWARDING COMPASS AND HOLLERMAN THEIR FEES AND COSTS INCURRED IN DEFENDING AGAINST THE KNAPPS' MOTION TO COMPEL. ..................................................................................................31

VI.   THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN GRANTING COMPASS AND HOLLERMAN'S RULE 11 MOTION AND AWARDING ATTORNEYS' FEES AND COSTS AS SANCTIONS................................32

A.      The District Court Properly Awarded Sanctions Because
        the Knapps Knew Their Claims Were Meritless but
        Refused to Dismiss Them. .................................................................34

B.      The District Court Properly Awarded Sanctions Because
        the Knapps' Claims Are Based on Pseudo-Legal
        Conspiracy Theories. .........................................................................35

C.      The Knapps' Arguments Against the Imposition of
        Sanctions are Unavailing. ..................................................................39

CONCLUSION .......................................................................................................40

CERTIFICATE OF COMPLIANCE AND TECHNICAL
        REQUIREMENTS .........................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Arau v. Rocket Mortgage, LLC*,
    2023 U.S. Dist. LEXIS 109814 (N.D. Cal. Jun. 26, 2023) ...............................37

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................2, 15

*Atkins v. Prudential Ins. Co.*,
    404 F. App'x 82 (8th Cir. 2010) ........................................................................13

*Barringer v. Ohio*,
    No. 3:23 CV 1530, 2023 WL 8436427 (N.D. Ohio Dec. 5, 2023) ....................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................2, 15

*Bogney v. Jones*,
    904 F.2d 272 (5th Cir. 1990) .............................................................................14

*Brown v. Home State Bank*,
    2023 U.S. Dist. LEXIS 215814 (E. D. Wisc. Dec. 5, 2023) .............................38

*Bryant v. Washington Mutual Bank*,
    524 F.Supp.2d 753 (W.D.Va. 2007)..................................................................37

*Butler v. Onewest Bank, FSB*,
    No. 10–00300HG–KSC, 2010 WL 3156047 (D. Haw. Aug. 6,
    2010) ..................................................................................................................23

*Caranchini v. Nationstar Mortg., LLC*,
    97 F.4th 1099 (8th Cir. 2024) ...............................................................13, 39, 40

*In re Conservatorship of Riebel*,
    625 N.W.2d 480 (Minn. 2001) .....................................................................2, 27

*Coonts v. Potts*,
    316 F.3d 745 (8th Cir. 2003) .............................................................................33

# TABLE OF AUTHORITIES

*Cooter & Gell v. Hartmarx Corp.*,
 496 U.S. 384 (1990)...............................................................................3, 33

*Cox v. Mid-Minnesota Mut. Ins. Co.*,
 909 N.W.2d 540 (Minn. 2018) ...........................................................30

*In re Disciplinary Action Against Ray*,
 452 N.W.2d 689 (Minn. 1990) ............................................................28

*Dockery v. Leonard*,
 46 F. App'x 868 (8th Cir. 2002) ........................................................13

*Dubai Islamic Bank v. Citibank, N.A.*,
 126 F. Supp. 2d 659 (S.D.N.Y. 2000) ...............................................23

*El v. Wells Fargo Bank*,
 No. 219CV02538JTFCGC, 2020 WL 1941322 (W.D. Tenn. Mar.
 12, 2020) ..............................................................................................23

*Fitchette v. Taylor*,
 191 Minn. 582, 254 N.W. 910 (1934) ...........................................2, 28

*Glick v. W. Power Sports, Inc.*,
 944 F.3d 714 (8th Cir. 2019) .............................................................13

*H & Q Props. v. Doll*,
 793 F.3d 852 (8th Cir. 2015) .............................................................13

*Harp v. Police*,
 No. CV 23-2577, 2023 WL 5152625 (E.D. Penn. Aug. 10, 2023) ..............18, 21

*Heath v. Root9b*,
 No. 18-CV-01516-RBJ-KMT, 2019 WL 1045668 (D. Colo. Mar.
 4, 2019) ................................................................................................23

*Hennis v. Trustmark Bank*,
 2010 U.S. Dist. LEXIS 45759 (S.D. Miss. May 10, 2010) .........................18, 37

# TABLE OF AUTHORITIES

**Page**

*JMC Prop. Grp., LLC v. Fortune Co., Inc.*,
  2023 U.S. Dist. LEXIS 43304 (S. D. Ind. Mar. 14, 2023) ..................................7

*Kunzer v. Magill*,
  667 F. Supp. 2d 1058 (D. Minn. 2009)..................................................................22

*Larsen v. Mayo Med. Ctr.*,
  218 F.3d 863 (8th Cir. 2000) ........................................................................3, 29

*McLaughlin v. CitiMortgage, Inc.*,
  726 F. Supp. 2d 201 (D. Conn. 2010)...........................................................36, 37

*Melillo v. Heitland*,
  880 N.W.2d 862 (Minn. 2016) .............................................................................29

*Morton v. J.P. Morgan Chase & Co.*,
  No. 623CV04570BHHJDA, 2023 WL 8767544 (D.S.C. Nov. 21,
  2023) .....................................................................................................................18

*Murphy v. Capital One*,
  2023 WL 5929340 (E.D. Mo. Sept. 12, 2023) ...............................................18, 22

*Paisley Park Enterprises, Inc. v. Boxill*,
  361 F. Supp. 3d 869 (D. Minn. 2019)...................................................................15

*Printed Media Servs. v. Solna Web, Inc.*,
  11 F.3d 838 (8th Cir. 1993) ....................................................................................3

*Pugh v. Minnesota*,
  380 F. App'x 558 (8th Cir. 2010) .....................................................................2, 14

*Ritchie v. Lisa Chan*,
  No. 23-CV-1715-JO-BGS, 2024 WL 270108 (S. D. Cal. Jan. 23,
  2024) .....................................................................................................................18

*Sharma v. Crosscode, Inc.*,
  2022 U.S. Dist. LEXIS 47796 (D. Minn. March 17, 2022) ..................................33

# TABLE OF AUTHORITIES

*Thiel v. First Federal Sav. & Loan Ass'n of Marion*,
    646 F. Supp. 592 (N.D. Ind. 1986) ....................................................34

*Tobias v. Revier*,
    2021 Minn. App. Unpub. LEXIS 428 (Minn. Ct. App. May 3,
    2021) ..............................................................................................30

*United States v. Allison*,
    264 Fed.Appx. 450 (5th Cir. 2008)....................................................38

*United States v. Getzschman*,
    81 Fed. Appx. 619 (8th Cir. 2003)...........................................3, 36, 38

*United States v. Wadena*,
    152 F.3d 831 (8th Cir. 1998) .............................................................23

*United States v. Weldon*,
    2010 U.S. Dist. LEXIS 52856 ...........................................................36

*Welk v. GMAC Mortg.*,
    850 F. Supp. 2d 976 (D. Minn. 2012)................................................33

*White v. Boucher*,
    322 N.W.2d 560 (Minn. 1982) ..........................................................20

*White v. Lake Union Ga Partners LLC*,
    No. 1:23-cv-02852-VMC, 2023 WL 6036842 (N.D. Ga. July 14,
    2023) ..............................................................................................18

*Yohannes v. Minn. IT Servs.*,
    No. 21-CV-0620, 2021 U.S. Dist. LEXIS 149934 (D. Minn. Aug.
    10, 2021) ........................................................................................30

**Statutes**

12 U.S.C. § 221 ..................................................................................21

# TABLE OF AUTHORITIES

**Page**

12 U.S.C. § 412 .................................................................................*passim*

12 U.S.C. § 504 ..................................................................8, 11, 21, 22

28 U.S.C. § 547 ...........................................................................2, 22

28 U.S.C. § 1291 .................................................................................1

Minn. Stat. § 82.67 ..........................................................................20

Minn. Stat. § 336.3-104 ....................................................................17

Minn. Stat. § 336.3-106(a) ...............................................................17

Minn. Stat. § 481.02 ....................................................................27, 28

Minn. Stat. § 523.20 ..........................................................24, 25, 26, 32

Minn. Stat. § 523.23 ....................................................................25, 26

Minn. Stat. § 523.24 ..........................................................................27

**Other Authorities**

District of Minnesota Local Rule 7.1 ........................................14, 39, 40

Fed. R. App. P. 4 ..........................................................................2, 14

Fed R. Civ. P. 4 ............................................................................3, 29

Fed. R. Civ. P. 6 ...............................................................................31

Fed. R. Civ. P. 11 .............................................................................*passim*

Fed. R. Civ. P. 12 .......................................................................15, 30

Fed. R. Civ. P. 37 .............................................................................*passim*

Minn. R. Civ. P. 4.03 .........................................................................29

## STATEMENT OF JURISDICTION

Because the Knapps' Notice of Appeal was not timely filed, this Court lacks jurisdiction to consider the Knapps' challenges to the district court's June 4, 2024 order dismissing all claims, denying the Knapps' motions to compel communication and for default judgment, and allowing Compass and Hollerman their fees for responding to the Knapps' motion to compel communication. The district court's order granting Compass and Hollerman's Joint Motion to Dismiss and denying the Knapps' Motions to Compel Communication and Motions for Default Judgment was entered on June 4, 2024, and the Clerk entered Judgment on June 5, 2024. R. Doc. 59, at 25; R. Doc. 61, at 1. The Knapps filed their Notice of Appeal with the district court on August 24, 2024. *See* R. Doc. 74, at 1.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear issues related to the district court's order granting Compass and Hollerman's Joint Motion for Sanctions, which was filed on August 9, 2024, and judgment was entered by the clerk on August 12, 2024. R. Doc. 71, at 10; R. Doc. 73, at 1.

## STATEMENT OF THE ISSUES

1.     Whether this Court has jurisdiction to review the district court's June 4, 2024 order dismissing the case and denying the Knapps' motion to compel communication and motions for default judgment.

Apposite authorities:

Fed. R. App. P. 4
*Pugh v. Minnesota*, 380 F. App'x 558, 559 (8th Cir. 2010)

2.     Whether the Knapps' Complaint fails to state a claim for which relief can be granted.

Apposite authorities:

12 U.S.C. § 412
28 U.S.C. § 547
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

3.     Whether the district court abused its discretion in denying the Knapps' motion to compel communication.

Apposite authorities:

Fed. R. Civ. P. 37
Minnesota statutes Chapter 523
*In re Conservatorship of Riebel*, 625 N.W.2d 480 (Minn. 2001)
*Fitchette v. Taylor*, 191 Minn. 582, 584, 254 N.W. 910, 911 (1934)

4.     Whether the district court abused its discretion in denying the Knapps' motion for default judgment.

Apposite authorities:

Fed R. Civ. P. 4

*Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 868 (8th Cir. 2000)

*Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993)

5.    Whether the district court abused its discretion in granting Compass

and Hollerman's joint motion for sanctions.

Apposite authorities:

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)

*United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003)

**STATEMENT OF THE CASE**

## I.  FACTUAL ALLEGATIONS

The Knapps filed a Complaint in federal court on January 12, 2024, against Compass and Hollerman. R. Doc. 1. Hollerman is a real estate broker for Compass and is licensed in the State of Minnesota to sell real estate. *See* R. Doc. 6, at ¶ 6. The Knapps engaged Hollerman to both sell their current home and purchase another and executed various contracts related to the sale of their property and purchase of another. *See id.* at ¶ 9. During this process, the Knapps hired Williams to act as their attorney-in-fact. *See id.* at ¶ 10. The Knapps each executed documents entitled "Limited Power of Attorney" (the "POA documents") that purport to appoint Williams as their attorney-in-fact. *See* R. Doc. 14-4.

The Knapps assert they retained Williams to review the documents related to their purchase and sale of property. R. Doc. 1, at ¶ 10. During this review, Williams allegedly noticed that some of the documents were "collateral securities" that he believed could be exchanged for Federal Reserve notes pursuant to 12 U.S.C. § 412. *Id.* at ¶¶ 11–12. Williams allegedly "gave orders to have those collateral securities exchanged for Federal Reserve Notes and to have those notes placed in escrow." *Id.* at ¶ 17. The documents the Knapps allege are "collateral securities" are various contract documents related to the underlying real estate transactions.[1] *See id.* at

_____

[1] Although they were not specifically attached as exhibits to the Complaint, the

¶¶ 18–60. The Knapps allege Hollerman "ignored orders to have collateral securities exchanged for Federal Reserve Notes," and because of this, the Knapps "were not able to complete the purchase of the requested home." *Id.* at ¶¶ 65–68. All the allegations of the Complaint arise from Williams' mistaken conclusion that the documents in question are "collateral securities," and his advice to the Knapps and "orders" to Compass and Hollerman that the documents should be exchanged for Federal Reserve notes. *See generally* R. Doc. 1.

Upon information and belief, the Complaint was drafted by Williams. Williams references this lawsuit on his various social media pages and on the website for his "law firm," Williams & WILLIAMS Law Group (hereinafter "WWLG"). *See* R. Doc. 37, at ¶¶ 6–7; R. Doc. 37-1. On the WWLG website, Williams provides a brief background of the dispute, referring to it as "Case 1," and describes how he drafted the Complaint. *See* R. Doc. 37, at ¶ 7; R. Doc. 37-1. The WWLG website further describes how the "law firm" will assist "clients" in bringing legal claims in exchange for a "A VERY LARGE DOWN PAYMENT" in the range of $50,000 to $250,000. R. Doc., at ¶ 9; R. Doc. 37-2. In email communications with counsel for Hollerman, Williams asserted he is "the driving force behind everything that is

_____

contracts are necessarily embraced by and specifically referenced in the Complaint, and the district court properly considered the documents. R. Doc. 13, at ¶¶ 3–6, Ex. A–D (R. Doc. 13, at 3–88); *see* R. Doc. 59, at 3, n. 1.

occurring" in this litigation, and he has "personally trained Preston [Knapp] in much of this information, but…[Williams is] the guy who is controlling much of what is occurring." *See* R. Doc. 38, at ¶ 3; R. Doc. 38-1, at 1–2.

Upon reviewing the Complaint, counsel for Compass and Hollerman contacted the Knapps to arrange a meet and confer regarding the frivolous nature of the suit and Compass and Hollerman's intention to file a motion to dismiss. R. Doc. 37, at ¶ 11; R. Doc. 37-3; *see also* R. Doc. 38, at ¶ 4; R. Doc. 38-1, at 3–7. In these email exchanges, Appellant Preston Knapp indicated that he would be joined at the meet and confer by Williams as his "agent and attorney operating pursuant to MN Statues Chapter 523." R. Doc. 37-3. Counsel for Compass and Hollerman explained to the Knapps that they would not discuss the merits of the case with Williams, because he was not a licensed attorney, and therefore could not legally represent the Knapps in this matter. *See id*; *see also* R. Doc. 38, at ¶ 5; R. Doc. 38-1, at 3–7.

The Knapps then indicated that they wished to meet and confer regarding their intention to bring a "Motion to Compel communication with Attorney-in-Fact Brandon Joe Williams" as well as motions for default judgment. *See* R. Doc. 37-3. Counsel for Compass explained to the Knapps why there was no legal basis for their motions, and that if they persisted in bringing the frivolous motions, Compass and Hollerman would seek attorneys' fees and costs. *See id*.

The parties scheduled a meet and confer, which took place via telephone on

February 20, 2024. *Id.*, ¶ 16; *see also* R. Doc. 38, at ¶ 8. Preston Knapp was joined by Williams and another individual purporting to act as the Knapps' "attorney-in-fact," Joey Kimbrough.[2] R. Doc. 37, at ¶ 17; *see also* R. Doc. 38, at ¶ 8. Preston Knapp, Williams, and Kimbrough all spoke on behalf of the Knapps during the meet and confer, including asserting various legal arguments. R. Doc. 37, at ¶ 18; *see also* R. Doc. 38, at ¶ 9. At one point, Williams implied that counsel for Compass and Hollerman were not competent to handle this matter because they are not securities attorneys and indicated his willingness to answer questions and explain various aspects of securities law to counsel for Compass and Hollerman. R. Doc. 37, at ¶ 19; *see also* R. Doc. 38, at ¶ 10.

Counsel for Compass and Hollerman again attempted to explain to Williams and Kimbrough that they could not represent the Knapps or provide legal advice because they were not licensed attorneys. R. Doc. 37, at ¶ 20. Counsel for Compass and Hollerman also reiterated the frivolous nature of the Knapps' motion to compel and their intent to seek sanctions if the Knapps persisted with the motion. (*Id.* ¶ 24.)

The district court took "judicial notice that Brandon Joe Williams is the principal of [WWLG] an entity that concedes that it engages in the unlicensed

_____

[2] Kimbrough has previously been warned by the Southern District of Indiana to cease attempting to represent other litigants in court. *See JMC Prop. Grp., LLC v. Fortune Co., Inc.*, 2023 U.S. Dist. LEXIS 43304, *7-8 (S. D. Ind. Mar. 14, 2023).

practice of law as a matter of course." R. Doc. 59, at 4, n. 2. As the district court explained, according to WWLG's website, it "endorses beliefs concerning the U.S. legal system consistent with the Sovereign Citizen movement."[3] *Id.*

## II. PROCEDURAL HISTORY

The Knapps filed the Complaint *pro se* on January 12, 2024, asserting damages for state law claims of breach of contract and fiduciary duties, a claim under the Federal Reserve Act, 12 U.S.C. § 504, and multiple claims for violations of several criminal statutes. *See generally* R. Doc. 1.

---

[3] As the district court explained in a prior decision:

> the "Sovereign Citizens" movement is based on a theory where they view the "USG [U.S. Government] as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Members of this movement think that the federal government has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.

R. Doc. 59, at 4 n. 2 (quoting *United States v. Graham,* Case No. 19-cr-185(2) (SRN/KMM), 2020 WL 614808 at *3 n.1 (D. Minn. Feb. 10, 2020)).

The Knapps filed a notice of service of process on February 2, 2024, showing copies of the Complaint had been sent to Compass and Hollerman via certified mail on January 16, 2024, with Compass allegedly receiving its copy on January 25, 2024. R. Doc. 9, at ¶ 2; R. Doc. 9-2, at 1–3.

Compass and Hollerman filed a joint motion to dismiss on February 20, 2024, arguing the Complaint should be dismissed for insufficient process and service of process and for failure to sate a claim. R. Doc. 10. On February 22, 2024, the Knapps filed a motion to compel communications with Williams as the Knapps' attorney-in-fact, as well as motions for default judgment against both Compass and Hollerman. *See* R. Doc. 22, 27, 30.

On March 20, 2024, Compass and Hollerman filed a joint motion for sanctions, asserting the Complaint violated Rule 11 of the Federal Rules of Civil Procedure. *See* R. Doc. 44.

On June 4, 2024, the district court issued an order dismissing the Complaint and denying the Knapps' motion to compel communication and motions for default judgment (the "June 4 Order"). R. Doc. 59, at 25. The district court also ordered Compass and Hollerman to submit affidavits and evidence supporting their reasonable attorneys' fees and costs and allowed the Knapps to file a responsive brief limited to addressing the reasonableness of Compass and Hollerman's attorneys' fees and costs. *Id.* On June 5, 2024, the clerk entered judgment on the

June 4 order. R. Doc. 61.

Compass and Hollerman submitted declarations and supporting documents related to their fees and costs on June 14, 2024. *See* R. Doc. 62–65.

On June 26, 2024, the Knapps filed a document entitled "Plaintiffs' Objections to Order," which outlined their disagreements with the June 4 Order. *See* R. Doc. 62–70. The Knapps also filed responses opposing Compass and Hollerman's declarations related to their attorneys' fees and costs. *See* R. Doc. 68–69.

On August 9, 2024, the district court issued an order granting Compass and Hollerman's joint motion for sanctions and awarding Compass and Hollerman their reasonable attorney's fees and costs (the "August 9 Order"). R. Doc. 71, at 10. On August 12, 2024, the clerk entered judgment on the August 9 order. R. Doc. 73.

On August 24, 2024, the Knapps filed their Notice of Appeal. R. Doc. 74. This appeal follows.

## SUMMARY OF ARGUMENT

The Knapps did not file their notice of appeal until more than 30 days after judgment was entered on the June 4 Order, which dismissed the Complaint with prejudice, denied the Knapps' motion to compel communication and motions for default judgment, and awarded Compass and Hollerman their costs and fees for defending against the motion to compel. Consequently, this Court lacks jurisdiction related to the June 4 Order.

Even if this Court disagrees and holds it can consider the merits of the June 4 Order, the district court correctly dismissed the Complaint and did not abuse its discretion by denying the Knapps' motions and awarding Compass and Hollerman's costs and fees under Rule 37. The Complaint fails to articulate a cognizable claim for relief. The Knapps' breach of contract and breach of fiduciary duty claims are based on conspiracy theories that have been rejected by every federal court to consider such claims, and the Complaint failed to identify any contractual provision or fiduciary duty that was allegedly breached. The Knapps' claim under 12 U.S.C. § 504 was properly dismissed because there is no private right of action under that statute and it does not apply to Compass and Hollerman, because they are not banks. The remaining claims were correctly dismissed because the Knapps cannot enforce criminal statutes.

The district court correctly exercised its discretion when it denied the Knapps'

motion to compel communications with Williams because no statute or rule authorizes such a motion, and Compass and Hollerman did not violate Minnesota law by refusing to communicate with Williams. The district court properly denied the Knapps' motion for default judgment against Compass because Compass was not properly served and timely filed its responsive pleading. Finally, the district court correctly exercised its discretion in granting Compass and Hollerman's motion for sanctions and awarding costs and fees as a sanction to deter the Knapps from filing frivolous cases in the future.

## STANDARD OF REVIEW

This Court reviews decisions to impose sanctions, whether under Rule 11 or Rule 37, for an abuse of discretion. *Caranchini v. Nationstar Mortg., LLC*, 97 F.4th 1099, 1101 (8th Cir. 2024) (Rule 11); *Dockery v. Leonard*, 46 F. App'x 868, 868 (8th Cir. 2002) (Rule 37).

To the extent this Court has jurisdiction to review the June 4 Order, this Court reviews orders granting a motion to dismiss de novo, *H & Q Props. v. Doll*, 793 F.3d 852, 855 (8th Cir. 2015), and reviews orders on a motion to compel and a motion for default judgment for abuse of discretion. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (motion for default judgment); *Atkins v. Prudential Ins. Co.*, 404 F. App'x 82, 84 (8th Cir. 2010) (motion to compel discovery); *Dockery*, 46 F. App'x at 868 (Rule 37).

# **ARGUMENT**

## I. **THE KNAPPS' APPEAL OF THE JUNE 4 ORDER IS UNTIMELY.**

Federal Rule of Appellate Procedure 4 provides that appeals in civil cases "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." The Clerk entered judgment on the June 4 Order on June 5, 2024. R. Doc. 59, at 25; R. Doc. 61, at 1. The Knapps did not file their Notice of Appeal until August 24, 2024, more than 30 days after the June 5, 2024 Entry of Judgment. *See* R. Doc. 74, at 1. The Knapps' appeal is untimely as to the June 4 Order, and therefore this Court does not have jurisdiction over the issues raised in the June 4 Order.[4] *See Pugh v. Minnesota*, 380 F. App'x 558, 559 (8th Cir. 2010) (noting that compliance with the time limits in Rule 4 "are 'mandatory and jurisdictional'" (quoting *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 264 (1978))); *cf. Bogney v. Jones*, 904 F.2d 272, 273 (5th Cir. 1990) (explaining that "[t]he Supreme Court has held that a decision on the merits is final for purposes of appeal irrespective of the determination of attorneys' fees" and holding a notice of appeal

---

[4] While the filing of certain motions under Rule 4 can extend the time to appeal, the Knapps did not file any of the motion types delineated under the Rule. the Knapps filed a document entitled "Plaintiffs' Objections to Order" on June 26, 2024, but sought no relief by motion, let alone a motion of the type outlined in Rule 4. *See generally* R. Doc. 70; *see also* District of Minnesota Local Rule 7.1(j) (requiring that "a party must not file a motion to reconsider" "[e]xcept with the court's prior permission," and "[a] party who seeks permission to file a motion to reconsider must first file and serve a letter of no more than two pages requesting such permission").

that was not filed until after the district court's sanction award was untimely under Rule 4 as to the merits decision). The only remaining issue properly before this Court is whether the district court abused its discretion in granting Compass and Hollerman's joint motion for sanctions.

## II.   THE DISTRICT COURT PROPERLY GRANTED COMPASS AND HOLLERMAN'S JOINT MOTION TO DISMISS.

Even if the Knapps had timely appealed the June 4 Order, their appeal lacks merit. The district court properly dismissed the Complaint because it fails to articulate a cognizable claim for relief.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must establish sufficient facts that state a claim for relief that is plausible on its fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine if a claim is sufficient, the court accepts and treats all the factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Paisley Park Enterprises, Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 (D. Minn. 2019) (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)). However, the court must disregard legal conclusions couched as fact, and merely reciting the elements of a cause of action is insufficient to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they must demonstrate a "right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id*. at 555, 570.

The Complaint does not state a plausible claim against Compass and Hollerman. Rather, the Complaint merely asserts claims on the unfounded legal conclusions that: (1) the contracts in question are securities; (2) Compass and Hollerman are banks within the meaning of Title 12; (3) Compass and Hollerman breached unidentified contracts and fiduciary duties by refusing to follow the "orders" of Williams; and (4) the Knapps can act as prosecutors to enforce the criminal code. The law offers no support for any of those claims, and the district court properly dismissed the Complaint for failure to state a claim.

A.    **The District Court Properly Dismissed Counts 1 and 2 Because the Contracts Are Not "Securities," Compass and Hollerman Are Not "Reserve Banks," and the Federal Reserve Act Does Not Provide a Private Right of Action.**

Regarding Counts 1 and 2 for breach of contract and breach of fiduciary duties, the Knapps asserted that the contracts at issue are "negotiable instruments" and therefore are "collateral securities," and as securities, Compass and Hollerman were required to exchange them with the Federal Reserve. *See* R. Doc. 1, at ¶¶ 9–12. the Knapps' claims are meritless, because the contracts are not "collateral securities," Compass and Hollerman are not "reserve banks" as defined by the Federal Reserve Act (the "Act"), and section 412 does not provide a private right of action.

A negotiable instrument is defined by the Uniform Commercial Code as:

> [A]n *unconditional* promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time…

Minn. Stat. § 336.3-104 (emphasis added). The contracts are not *unconditional* promises to pay because they contain numerous express conditions to payment, including mortgage financing contingencies, inspection contingencies, contingencies for the sale of the buyer's property, conditions requiring the successful closing of the sale(s), and various other conditions. *See* Minn. Stat. § 336.3-106(a).

Even if the contracts were negotiable instruments—which they are not—they still are not "collateral securities" subject to exchange for Federal Reserve notes pursuant to 12 U.S.C. § 412. Section 412 provides that Federal Reserve banks may apply for notes in exchange for "collateral security" in the form of "notes, drafts, bills of exchange, or acceptances *acquired under section 10A, 10B, 13, or 13A of this Act [12 USCS §§ 92, 342–48, 349–352, 361, 372, or 373]…*" 12 U.S.C. § 412 (emphasis added). The contracts are not "notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A" of the Act. Those sections of the Act specifically refer to the receipt of money, notes, checks, and drafts *by Federal Reserve banks, national banking associations, and depository institutions*. None of the individuals or entities involved are Federal Reserve banks, nor are they national banking associations or depository institutions. Many federal courts, like

the district court below, have rejected similar claims.[5] Even the Knapps admitted below that Compass and Hollerman are not reserve banks subject to the Act. *See* R. Doc. 35 at 14 ("Plaintiffs do not assert that Defendants are reserve banks but that the transactions involving Defendants are governed by principles that can be analogously applied from banking regulations due to the financial and negotiable nature of the Contracts and Documents.").

Moreover, the Act does not provide a private right of action, and numerous federal courts have so held. *See, e.g., Ritchie v. Lisa Chan*, No. 23-CV-1715-JO-BGS, 2024 WL 270108, at *2 (S. D. Cal. Jan. 23, 2024) ("The Federal Reserve Act is 'entirely unrelated to consumer finance and does not provide any rights to a private citizen.'" (quotation omitted)); *Morton v. J.P. Morgan Chase & Co.*, No. 623CV04570BHHJDA, 2023 WL 8767544, at *5 (D.S.C. Nov. 21, 2023), *Murphy v. Capitol One*, No. 4:23-CV-1120 HEA, 2023 WL 5929340, at *3 (E.D. Mo. Sept.

---

[5] *See, e.g., Harp v. Police*, No. CV 23-2577, 2023 WL 5152625 (E.D. Penn. Aug. 10, 2023) (rejecting plaintiff's claims based on attempt to pass off fictitious "bill of exchange" consisting of handwritten note containing "an array of financial buzzwords" as a valid legal tender for her credit card debt and noting "other courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'"); *see also Hennis v. Trustmark Bank*, 2010 U.S. Dist. LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous.").

12, 2023); *White v. Lake Union Ga Partners LLC*, No. 1:23-cv-02852-VMC, 2023 WL 6036842, at *2 (N.D. Ga. July 14, 2023).

The Knapps' claims of breach of contract and breach of fiduciary duty, which are premised on violations of section 412, are frivolous and were properly dismissed by the district court.

### B. The District Court Properly Dismissed the Knapps' Breach of Contract Claim Because the Knapps' Complaint Failed to Identify Any Contract or Provision That Was Breached.

The Knapps' breach of contract claim also fails as a matter of law for failure to identify any contract or contractual provision that was allegedly breached. The allegations of Count 1 merely re-hash the Knapps' claim that they, through Williams, ordered Compass and Hollerman to exchange the contracts for Federal Reserve notes, and that Compass and Hollerman ignored these orders. *See* R. Doc. 1, at ¶¶ 62–67. The Complaint then concludes that the Knapps have been damaged "due to this breach of contract." The Complaint never identifies any specific contract or contractual provision that was allegedly breached.

Even assuming the Knapps intended to refer to the contracts referenced in the Complaint, those documents contain no provisions that require Compass and Hollerman to follow the "orders" of Williams or attempt to exchange the contracts for Federal Reserve notes. To the contrary, the Buyer Representation Contract required Compass and Hollerman to act in the Knapps' best interests "subject to any

limitations imposed by law." R. Doc. 13, at 10. Compass and Hollerman fulfilled this obligation by refusing to engage in an unlawful attempt to exchange the contracts for Federal Reserve notes.

### C. The District Court Properly Dismissed the Knapps' Breach of Fiduciary Duties Claim Because the Knapps' Complaint Failed to Identify Any Duty That Was Breached.

The Knapps' breach of fiduciary duties claim also fails as a matter of law for failure to identify any legally cognizable duties that were breached. The Complaint asserts that Compass and Hollerman "had a fiduciary duty to complete orders sent by" Williams, and they breached this alleged "duty" by refusing to follow Williams' orders. However, Compass and Hollerman did not owe the Knapps a fiduciary duty to exchange fictitious "collateral securities" for Federal Reserve notes.

Real estate brokers owe fiduciary duties of good faith and loyalty, including the duty to communicate "all facts of which [they have] knowledge which might affect the principal's rights or interests." *See White v. Boucher*, 322 N.W.2d 560, 564 (Minn. 1982). Real estate brokers also owe statutory fiduciary duties, including duties to act in the clients' best interests and carry out the clients' lawful instructions. Minn. Stat. § 82.67.

For the reasons set forth above, the Knapps instructions to exchange the contracts for Federal Reserve notes were not only unlawful, but impossible. By refusing to follow Williams' unlawful instructions, Compass and Hollerman not

only did not breach any fiduciary duty, but they actually fulfilled their fiduciary duty to act in the Knapps' best interests.

**D.    The District Court Properly Dismissed the Knapps' Claim for Civil Penalties under 12 U.S.C. § 504 Because the Statute Does Not Apply to Compass and Hollerman or Provide a Private Right of Action.**

The district court correctly recognized the Knapps' claim for civil penalty under 12 U.S.C. § 504 as frivolous and properly dismissed it, because the statute does not apply to Compass and Hollerman or provide a private right of action.

Section 504 imposes penalties on "member banks" for a variety of misconduct. *See* 12 U.S.C. § 504. Under Title 12, "member banks" are defined as "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks." 12 U.S.C. § 221. Neither Compass nor Hollerman are banks. To the contrary, the Knapps acknowledge in their Complaint that Compass is "a Foreign Limited Liability Company," and Hollerman is a "real estate broker." R. Doc. 1, at ¶¶ 5-6.  The Knapps further admitted below that "[t]he reference to banking statutes within the Complaint is meant to provide context to the allegations regarding the nature of the breaches of contract and fiduciary duty. It is not intended to assert that Defendants are banks or that they are directly liable under these banking statutes." R. Doc. 35 at 23.

The Knapps' claim for a civil penalty under section 504 also lacks merit because section 504 does not provide a private right of action. *See Harp*, 2023 WL

5152625, at *4 (finding 12 U.S.C. § 504 does not create a private right of action and dismissing *pro se* claim); *see also Murphy v. Capital One*, 2023 WL 5929340, at *3 (E.D. Mo. Sept. 12, 2023) (finding the imposition of penalties under the statute is the purview of federal officials, and no private right of action exists under section 504).

The district court properly dismissed the Knapps' claim under 12 U.S.C. § 504 for failure to state a claim upon which relief can be granted.

### E.     The District Court Properly Dismissed the Knapps' Remaining Claims Because the Knapps, as Private Citizens, Cannot Enforce Criminal Statutes.

The Knapps' remaining claims also fail as a matter of law because they assert criminal claims which the Knapps cannot enforce.

Counts 4, 5, and 6 of the Complaint asserted claims based on the federal criminal statutes contained in Title 18. *See* R. Doc. 1, at ¶¶ 81–93. As private citizens, the Knapps do not have standing to bring these claims. *See* 28 U.S.C. § 547 ("Except as otherwise provided by law, each United States attorney, within his district, shall…prosecute for all offenses against the United States."); *Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062 (D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced.").

These claims also fail because there is no private right of action under these

statutes. The presence of a criminal statute neither creates nor implies a corresponding private right of action. *See United States v. Wadena*, 152 F.3d 831, 845–46 (8th Cir. 1998). Nothing in the language of any of the three statutes provides a private right of action, and courts have repeatedly found that the statutes in question do not provide a private right of action. *See El v. Wells Fargo Bank*, No. 219CV02538JTFCGC, 2020 WL 1941322, at *3 (W.D. Tenn. Mar. 12, 2020); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000); *Barringer v. Ohio*, No. 3:23 CV 1530, 2023 WL 8436427, at *2 (N.D. Ohio Dec. 5, 2023), *Heath v. Root9b*, No. 18-CV-01516-RBJ-KMT, 2019 WL 1045668, at *6 (D. Colo. Mar. 4, 2019), *Butler v. Onewest Bank, FSB*, No. 10–00300HG–KSC, 2010 WL 3156047, at *3 (D. Haw. Aug. 6, 2010).

The district court properly dismissed the Knapps' frivolous claims arising under Title 18.

## III. THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN DENYING THE KNAPPS' MOTION TO COMPEL COMMUNICATION.

### A. There is No Rule, Statute, or Case Law That Allows a Party to Bring a "Motion to Compel Communication" with a Non-Party.

The district court properly denied the Knapps' motion to compel Compass and Hollerman to communicate with Williams, because there is no legal basis for a "motion to compel communication" with a non-party.

While the district court correctly applied Rule 37 of the Federal Rules of Civil

Procedure to the Knapps' motion—as the closest analogue in the federal rules—Rule 37 does not provide any mechanism for bringing a "motion to compel communication" with a non-party. The Rule provides, "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The Rule then sets forth three specific types of motions that may be brought: 1) a motion "to compel disclosure"; 2) a motion "to compel a discovery response"; and 3) a motion "related to a deposition." Fed. R. Civ. P. 37(a)(3). The Rule does *not* authorize a court to require a party to communicate with a non-party, nor are Compass and Hollerman or the district court aware of any other rule, statute, or case law that provides for such relief. *See* R. Doc. 59, at 19–20. As such, the Knapps "motion to compel communication" is groundless and was properly denied by the district court.

### B.   The Power of Attorney Documents Executed by the Knapps Do Not Meet the Requirements of Minn. Stat. § 523.20.

The district court also correctly concluded that Compass and Hollerman are not liable for refusing to communicate with Williams under Minnesota statutes Chapter 523.

Minn. Stat. § 523.20 provides that a "party refusing to accept the authority of an attorney-in-fact to exercise a power granted by a power of attorney" may be held liable "in the same manner as the party would be liable had the party refused to accept the authority of the principal to act on the principal's own behalf." However,

Minn. Stat. § 523.20 sets forth six criteria that must be met before a party can be liable for refusing to accept the authority of an attorney-in-fact. The first and third criteria are relevant here.

The first criterion of Minn. Stat. § 523.20 requires that a power of attorney must be "executed in conformity with section 523.23." Subdivision 1 of Minn. Stat. § 523.23 provides a specific form that may be used to create a power of attorney. Subdivision 3 then indicates:

> [T]o constitute a "statutory short form power of attorney," as this phrase is used in this chapter **the wording and content of the form in subdivision 1 must be duplicated exactly and with no modifications**… A power of attorney that does not satisfy the requirements of this subdivision … but purports to be a statutory short form power of attorney, may constitute a common law power of attorney …; however, **a party refusing to accept the authority of the common law attorney-in-fact is not liable under section 523.20**.

Minn. Stat. § 523.23, Subd. 3 (emphasis added).

The POA documents executed by the Knapps do *not* duplicate the wording and content of the form in subdivision 1 of Minn. Stat. §523.23. Instead, Williams appears to have created his own power of attorney document, complete with his own "definitions" of various terms. *See* R. Doc. 14-4.[6]

---

[6] Williams' power of attorney document also fails to convey to him the power to assert claims or pursue litigation on behalf of the Knapps. It conveys only the power to "[p]erform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities..." *See* R. Doc. 14-4.

The third criterion of Minn. Stat. § 523.20 requires that a power of attorney must contain "an acknowledgement that the attorney-in-fact has read and understood the notice to the attorney-in-fact required under section 523.23." The notice to the attorney-in-fact contained in section 523.23 includes specific language regarding the duties and responsibilities of an attorney-in-fact that must be included in a power of attorney and acknowledged by the attorney-in-fact. *See* Minn. Stat. § 523.23, Subd. 1. The POA documents in this case do not contain this language. *See* R. Doc. 14-2; R. Doc. 14-4.

The POA documents do not meet the criteria set forth in Minn. Stat. § 523.20, and the district court correctly held that Compass and Hollerman are not liable for refusing to communicate with Williams.

**C.** **Compass Was Not Required to Communicate with Williams Because His Purported Representation of the Knapps Constituted the Unauthorized Practice of Law.**

Even if the Knapps had executed valid power of attorney documents pursuant to Minnesota statutes Chapter 523—which they did not—they could not convey to Williams the power to act as their attorney in legal proceedings.

Minn. Stat. § 523.24 sets forth the types of powers that may be granted to an attorney-in-fact pursuant Minnesota's statutory short form power of attorney. While the statute allows an attorney-in-fact to pursue legal claims on behalf of the principal, the Minnesota Supreme Court expressly held in *In re Conservatorship of Riebel*, 625 N.W.2d 480 (Minn. 2001) that a power of attorney does *not* authorize a non-attorney to act as an attorney on behalf of the principal. *Id.* at 482. The court explained:

> [A] power of attorney authorizes the attorney-in-fact to act on behalf of the principal as the client in an attorney-client relationship. …That is, the attorney-in-fact may make decisions concerning litigation for the principal, but a nonlawyer attorney-in-fact is not authorized to act as an attorney to implement those decisions.

*Id.*

The POA documents executed by the Knapps do not convey authority to Williams to act as their attorney or engage in the authorized practice of law. Yet that is precisely what Williams has done and what the Knapps motion sought to do.

Minn. Stat. § 481.02 sets forth the actions that are considered the unauthorized practice of law, including:

> [T]o appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity, or, by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services…

Minn. Stat. § 481.02, Subd. 1. *See also In re Disciplinary Action Against Ray*, 452 N.W.2d 689, 693 (Minn. 1990) (advising clients in legal matter and attempting to negotiate settlement is the practice of law); *Fitchette v. Taylor*, 191 Minn. 582, 584, 254 N.W. 910, 911 (1934) (giving advice regarding legal status and rights of another is the practice of law).

Williams clearly engaged in several of these activities. Not only did he provide inaccurate legal advice to the Knapps regarding the documents related to their sale and purchase of property and whether such documents constitute "collateral securities," he also sought to provide legal advice *to counsel for Compass and Hollerman* regarding securities law. In addition, Williams clearly holds himself out as competent to give legal advice, prepare legal documents, and furnish the services of a lawyer in exchange for a fee on the WWLG website. Upon information and belief, Williams and Kimbrough drafted the Complaint, as well as the Knapps' Motion to Compel and other motions brought by the Knapps before the district court.

The district court correctly denied the Knapps' motion to compel communication with Williams.

## IV. THE DISTRICT COURT PROPERLY DENIED THE KNAPPS' MOTION FOR DEFAULT JUDGMENT.

The district court correctly denied the Knapps' motion for default judgment because the Knapps' attempt to serve Compass via certified mail was insufficient, and Compass responded to the Complaint within the time provided by the Federal Rules of Civil Procedure.

Under Rule 4 of the Federal Rules of Civil Procedure, "a domestic or foreign corporation, or a partnership or other unincorporated association" must be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed R. Civ. P 4(h)(1). Both methods require *personal* service— service by mail is not acceptable. *See* Fed. R. Civ. P. 4(e)(1) (authorizing "following state law for serving a summons."); Minn. R. Civ. P. 4.03; *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 868 (8th Cir. 2000) (finding service on corporation ineffective where "summons and complaint were mailed and not personally served on anyone during the limitations period."); *see also Melillo v. Heitland*, 880 N.W.2d 862, 865 (Minn. 2016) ("In summary, the rules governing service by mail, personal service, and return of service are clear and unambiguous. Service by certified mail does not

29

comply with them."); *Cox v. Mid-Minnesota Mut. Ins. Co.*, 909 N.W.2d 540, 544 (Minn. 2018) ("The accepted legal meaning of 'delivery' contemplates personal delivery."); *Yohannes v. Minn. IT Servs.*, No. 21-CV-0620 (PJS/KMM), 2021 U.S. Dist. LEXIS 149934, at *10 (D. Minn. Aug. 10, 2021) (noting plaintiff must arrange for someone else to physically deliver the summons and complaint; he cannot deliver them himself, and he cannot effect service through mail or email); *Tobias v. Revier*, 2021 Minn. App. Unpub. LEXIS 428, *5-6 (Minn. Ct. App. May 3, 2021) ("Mail delivery is not personal delivery." (citing *Singelman v. St. Francis Med. Ctr.*, 777 N.W.2d 540, 543 (Minn. Ct. App. 2010))).

Even if the Knapps' service had been effective—which it was not—Compass filed and served a timely responsive pleading on February 20, 2024. Rule 12 of the Federal Rules of Civil Procedure provides that a party must serve a responsive pleading within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). Under this Rule, Compass's responsive pleading was originally due on February 15, 2024. However, because the Knapps attempted to serve Compass via mail, Rule 6(d) required that three additional days be added to the time within which Compass was required to respond, making Compass's response due on February 18, 2024, which was a Sunday. Rule 6 dictates that when the last day of the time period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal

holiday." Fed. R. Civ. P. 6(a)(1)(C). Because February 18, 2024 was a Sunday, and the following day, February 19, 2024, was a legal holiday, the time for Compass to respond did not expire until Tuesday, February 20, 2024. Compass filed its Motion to Dismiss on February 20, 2024, and thus was not in default under the Federal Rules of Civil Procedure.

The district court correctly held that the Knapps could not obtain a default judgment, and this Court should affirm.

## V. THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN AWARDING COMPASS AND HOLLERMAN THEIR FEES AND COSTS INCURRED IN DEFENDING AGAINST THE KNAPPS' MOTION TO COMPEL.

When a motion to compel is denied, Rule 37 of the Federal Rules of Civil Procedure *requires* the court to order the moving party to pay the non-moving party's reasonable expenses, including attorney's fees. Rule 37 states:

> If the motion is denied, the court … *must*, after giving an opportunity to be heard, require the movant … to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B) (emphasis added). Counsel for Compass and Hollerman attempted several times to explain to the Knapps why their motion to compel communication was meritless. the Knapps refused to acknowledge the frivolous

nature of the motion or provide any legal justification for it, other than repeatedly pointing to Minn. Stat. § 523.20, which, as explained above, is inapplicable and does not support the motion. Thus, because the Knapps' motion to compel communications was not substantially justified, nor do other circumstances make the award of expenses unjust, the district court correctly awarded Compass and Hollerman their attorneys' fees and costs incurred in defending against the motion.

## VI. THE DISTRICT COURT CORRECTLY EXERCISED ITS DISCRETION IN GRANTING COMPASS AND HOLLERMAN'S RULE 11 MOTION AND AWARDING ATTORNEYS' FEES AND COSTS AS SANCTIONS.

The district court also properly granted Compass and Hollerman's joint motion for sanctions under Rule 11.

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

(b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it— an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

2. the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…

Fed. R. Civ. P. 11(b). Rule 11(c) provides for the imposition of sanctions in the event there is a violation of Rule 11(b).

"In determining whether this provision has been violated, a court 'must determine whether a reasonable and competent attorney would believe in the merit of an argument.'" *Welk v. GMAC Mortg.*, 850 F. Supp. 2d 976, 1000 (D. Minn. 2012) (quoting *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003)). Rule 11 requires parties or their attorneys to conduct a reasonable inquiry of the factual and legal bases for their claims. *Coonts*, 316 F.3d at 753. "Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma v. Crosscode, Inc.*, 2022 U.S. Dist. LEXIS 47796, *46 (D. Minn. March 17, 2022) (quoting *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551, (1991); *Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995)). "[T]he central purpose of Rule 11 is to deter baseless filings in district court . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[P]ro se litigants are subject to the same Rule 11 standards as licensed attorneys." *Sharma*, 2022 U.S. Dist. LEXIS 47796, *46 (citing *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993)).

The district court correctly granted Compass and Hollerman's motion for sanctions because the Knapps willfully ignored legal precent indicating their claims were meritless, acknowledged their claims were meritless but refused to dismiss

them, and because the Knapps' claims were based on a conspiracy theory that has been repeatedly rejected by numerous courts around the country.

A.    **The District Court Properly Awarded Sanctions Because the Knapps Knew Their Claims Were Meritless but Refused to Dismiss Them.**

The district court properly granted Compass and Hollerman's motion for sanctions because the Knapps understood their claims were meritless yet refused to dismiss them.

Although *pro se* litigants are held to less stringent pleading requirements, they are not immune to Rule 11 sanctions. *See Thiel v. First Federal Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592, 596 (N.D. Ind. 1986). In *Thiel*, the Court found sanctions appropriate, in part due to the fact that the plaintiff "demonstrated his ability to find a case and appreciate its significance…[and] refused to take the final step and abandon a cause of action that obviously has abused the judicial system…" *Id*. at 598.

Similarly, here, the Knapps are clearly capable of conducting legal research, as demonstrated by their citations to case law in their opposition to Compass and Hollerman's motion to dismiss and their appellate brief. Despite their apparent ability to conduct such research, the Knapps asserted various legal arguments that are completely unsupported by the law. the Knapps willful refusal to acknowledge

the frivolous nature of their claims despite their ability to research and read case law supports the district court's imposition of sanctions.

Furthermore, sanctions were appropriate because the Knapps admitted their federal claims were meritless but still refused to dismiss them. In their opposition to Compass and Hollerman's motion to dismiss, the Knapps acknowledged they could not assert claims under Title 12. R. Doc. 35, at 14, 23. Similarly, the Knapps acknowledged they have no standing to assert claims under Title 18, including the claims set forth in Counts 4, 5, and 6 of their Complaint. *Id.* at 27–28. the Knapps claimed Counts 4, 5, and 6 were "not brought forth to invoke a private right of action or to enforce the federal criminal statutes themselves," and instead were "alleged to provide a legal basis and context for [Compass and Hollerman]' conduct." (*Id.*) the Knapps' refusal to dismiss claims they acknowledged they have no legal basis to assert further warranted the district court's imposition of sanctions.

### B. The District Court Properly Awarded Sanctions Because the Knapps' Claims Are Based on Pseudo-Legal Conspiracy Theories.

Sanctions were appropriate because all of the Knapps' claims are based on a version of the pseudo-legal theory called the "redemption theory" and its off shoot, the "vapor money" theory, that have been soundly rejected by numerous federal courts.

> Followers of the redemption theory believe each citizen has a "private side" and a "public side." The theory provides that the government owns each citizen's public side or "straw man" by holding title to each

citizen's birth certificate. By filing UCC-1 financing statements and their birth certificates in a state that accepts such filings, followers of this theory believe they can "redeem" their birth certificates. Redemption theorists view the redeemed birth certificate as an asset on which they place a value of up to $ 2 million and assert the U.S. Treasury Department acts as a clearinghouse for the funds. Under this theory, they then create money orders and sight drafts drawn on their Treasury Direct Accounts to pay for goods and services.

*United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003). "Courts have characterized the redemption theory as 'implausible,' 'clearly nonsense,' 'convoluted,' and 'peculiar.'" *United States v. Weldon*, 2010 U.S. Dist. LEXIS 52856, *9-10 (E.D. Cal. May 4, 2010 (quoting *Bryant v. Washington Mutual Bank*, 524 F.Supp.2d 753, 760 (W.D.Va. 2007), aff'd, 282 Fed.Appx. 260 (4th Cir. 2008); *United States v. Allison*, 264 Fed.Appx. 450, 452 (5th Cir. 2008)).

Similar to the redemption theory, under the "vapor money" theory, proponents believe "that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010).

Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. Then, according to the vapor money theory, the bank purports to lend the 'money' that was "created" by the citizen's signature back to the citizen-borrower.

*Id.*

The Complaint appears to rely on a form of the "vapor money" theory, under which the Knapps apparently believe that by "indorsing" certain documents

(including the contracts at issue in this case) using specific language and their signatures, such documents constitute "promissory notes" (if the document includes a promise to pay) or "bills of exchange" (if the document includes an order to pay), which can then be used as legal tender to purchase property or satisfy debts. *See* R. Doc. 1, at ¶¶ 11–60.

Claims arising under the redemption and "vapor money" theories have been repeatedly rejected by federal courts around the country. *See McLaughlin*, 726 F. Supp. 2d at 214 ("[T]hese theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years."); *Hennis v. Trustmark Bank*, 2010 U.S. Dist. LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous."); *see also Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 760 (W.D. Vir. 2007) (rejecting plaintiff's claims as "clearly nonsense in almost every detail," where plaintiff attempted to exchange a "Bill of Exchange" and financing statements that purported to register a "security interest" in "the fictitious entity that was created by her birth certificate and other government documents" for funds from the U.S. Treasury to satisfy her mortgage loan, and noting that the plaintiff "did not tender payment, but rather a worthless piece of paper."); *Arau v. Rocket Mortgage, LLC*, 2023 U.S. Dist. LEXIS 109814, *2-4 (N.D. Cal. Jun. 26, 2023) (rejecting plaintiff's

claims as "lack[ing] any legal foundation," where plaintiff asserted he discharged

mortgage debt by sending "bonds," which consisted of "a series of incomprehensible

documents with quasi-legal terminology" to the Depository Trust and Clearing

Corporation in New York, which the DTCC were allegedly required to exchange for

funds that would then be used to discharge his mortgage debt); *Brown v. Home State

Bank*, 2023 U.S. Dist. LEXIS 215814 (E. D. Wisc. Dec. 5, 2023) (rejecting claims

under Federal Reserve Act based on allegations that the plaintiff gave the defendant

"a collateral security accompanied with the proper tender pursuant to the Federal act

section 16 par 2").

Not only have claims brought under these theories been resoundingly rejected

by federal courts, but their proponents have been prosecuted for criminal offenses.

*See, e.g., United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003)

(affirming defendants' convictions for various crimes including conspiracy to make

and pass false or fictitious financial instruments based upon their attempts to use

money orders and sight drafts drawn on the Department of Treasury to pay for the

goods); *United States v. Allison*, 264 Fed. Appx. 450, 451 (5th Cir. 2008) (upholding

defendant's conviction for corruptly interfering with the administration of the

Internal Revenue Code and willfully making and subscribing false documents based

on defendant's act of mailing "municipal employees various papers purporting to be

'bills of exchange' and, when he received no response, … report[ing] to the IRS transfers of money or debt in the accounts maintained by the treasury.").

The district court properly awarded sanctions against the Knapps for asserting claims that are based on conspiracy theories and patently frivolous.

### C.    The Knapps' Arguments Against the Imposition of Sanctions are Unavailing.

The Knapps argue it was improper for the district court to award sanctions on their motion to compel communications because Rule 11 does not apply to Rule 37. The Knapps ignore that Rule 37 contains its own provisions authorizing the district court to require the losing party to pay the costs and fees incurred in defending against an unsuccessful motion to compel. Furthermore, the Knapps' argument that their motion was not a discovery motion, but a motion seeking "to enforce their statutory rights under Minnesota Statute 523," undermines their argument that Rule 11 does not apply to a Rule 37 motion. Appellants' Br. at 14 (emphasis removed). Because the Knapps motion did not fit neatly under any procedural rule, the district court properly analyzed it under the most appropriate rule, Rule 37, and awarded the costs and fees authorized by that rule.

The Knapps further argue that Compass and Hollerman failed to comply with Local Rule 7.1 requiring the parties meet and confer, despite the fact that Compass and Hollerman's counsel met and conferred with Appellant Preston Knapp. *See* R. Doc. 49. In support of this argument, the Knapps include a quote from *Caranchini*

*v. Nationstar Mortg.*, LLC, 97 F.4th 1099, 1102 (8th Cir. 2024) (which they incorrectly cite as *Martin Leigh PC v. Leyh*), which states that "[t]he safe-harbor provision is a strict procedural requirement." *See id.*; *see also* Appellants' Br. at 15. But *Caranchini* dealt with a situation where a party served its Rule 11 motion a month and a half after it had been dismissed from the case, which failed to afford the other party "an opportunity to remedy the sanctionable conduct and avoid the sanction." *Id.* Here, both Preston and Michelle Knapp were provided with an opportunity to dismiss their frivolous claims and withdraw their frivolous motions and decided not to do so. Compass and Hollerman complied with both the safe harbor requirement of Rule 11 and District of Minnesota Local Rule 7.1.

The district court fully considered the Knapps' challenges to Compass and Hollerman's motion for sanctions, correctly determined that the Knapps engaged in sanctionable conduct, and the district court's imposition of sanctions was properly within its discretion.

## CONCLUSION

The district court acted well within its discretion in its August 9, 2024 order granting Compass and Hollerman's joint motion for sanctions and determining the amount of costs and fees to award, and this Court should affirm. Because the Knapps failed to timely appeal the district court's June 4, 2024 order dismissing their Complaint, denying their motions, and deciding to award costs and fees under Rule

37, this Court should dismiss the remainder of the appeal for lack of jurisdiction.

Even if this Court were to reach the merits on the remaining issues, there is no

question the district court correctly dismissed the Knapps' Complaint and acted well

within its discretion in denying the Knapps' motions and awarding Compass and

Hollerman costs and fees under Rule 37.

Respectfully submitted this 7th day of November, 2024.

By: */s/ Tessa Mansfield Hirte* _____
    Tessa Mansfield Hirte (#0396591)
    Paul W. Magyar (#0399108)
    FOLEY & MANSFIELD, PLLP
    250 MARQUETTE AVENUE, SUITE 540
    MINNEAPOLIS, MN  55401
    Telephone:  (612) 338-8788
    ATTORNEYS FOR APPELLEE COMPASS
    MINNESOTA, LLC

## CERTIFICATE OF COMPLIANCE AND TECHNICAL REQUIREMENTS

This brief complies with the type-volume requirements of FRAP 32(a)(7)(B)(i). This brief was prepared using Microsoft Word Version 16.0 in 13-pt. font, which reports that the brief contains 9,211 words, excluding the parts of the brief exempted by FRAP 32(f). Pursuant to 8th Cir. R. 28A(h), this brief has been scanned for viruses and is virus free.

Dated this 7th day of November, 2024.

By: */s/ Tessa Mansfield Hirte* _____
     Tessa Mansfield Hirte (#0396591)
     Paul W. Magyar (#0399108)
     FOLEY & MANSFIELD, PLLP
     250 MARQUETTE AVENUE, SUITE 540
     MINNEAPOLIS, MN  55401
     Telephone:  (612) 338-8788
     ATTORNEYS FOR APPELLEE COMPASS
     MINNESOTA, LLC